UNION PAPER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6402.   Promulgated December 31, 1927.

*James D. Williams, Esq.*, for the petitioner.
*Granville S. Borden, Esq.*, for the respondent.

OPINION.

SMITH: The petitioner contends that the patent application which it owned on March 1, 1913, and for which the patent was issued by the United States Patent Office the following year, had a definite minimum value at March 1, 1913, of $35,000, and that for each of the taxable years 1917 and 1918 it is entitled to a deduction on account of the exhaustion of the patent equal to one-seventeenth of the March

1, 1913, value of the patent application. The respondent contends that the patent application had no determinable value at March 1, 1913, and that since the patent was acquired by the petitioner subsequent to that date the only basis for the statutory deduction for exhaustion of the patent is its cost to the petitioner and not the March 1, 1913, value of the patent application.

In support of its claim for a March 1, 1913, value of $35,000 for the patent application, the petitioner has shown its earnings over a period of four years next preceding the basic date and has shown the savings and labor cost which resulted to it from the use of the invention in carrying on its manufacturing business. For the four-year period 1909 to 1912 the petitioner's net earnings, as shown by its books of account, were approximately $63,500. The petitioner claims that its net earnings for this period and for several prior years are understated in its books by reason of the fact that many items of maintenance, renewals and replacements of machinery and equipment had been erroneously charged to the expense account, whereas under proper bookkeeping and accounting methods many of such items might have been charged to the capital account. It claims that certain items representing salaries paid to employees engaged in developing new machinery, including the invention here under consideration, which were charged to the expense account should have been charged to the capital account and that certain losses which it sustained during the period and which are reflected in the net income shown in its books were not connected with its regular business and should not be considered in determining net earnings for the purpose of valuing the patent application.

The petitioner has submitted in evidence numerous schedules and computations prepared from its books by accountants showing the result to be reached in determining net income over the four-year period in question by revising the books as indicated and making necessary adjustments for depreciation. Capitalizing the average net earnings over the four-year period at 10 per cent and allowing a fair rate on the average tangibles, the petitioner has determined an average value for the patent application and the other patents used in its business of approximately $110,068.72. Deducting $75,000, which the Commissioner is said to have allowed as the value of other patents, the petitioner has determined a value for the patent application under consideration of approximately $35,000, which it contends is the proper value upon which to base the deduction for exhaustion now sought. The respondent has objected to the materiality of this evidence and contends that the total earnings of the petitioner over such period are not competent evidence to prove the March 1, 1913, value of the patent application.

The petitioner's contentions that a patent application is property and as such is capable of definite valuation and that the value of the property must be determined by a consideration of all the facts which tend to establish value on the basic date are sound. *Individual Towel & Cabinet Service Co.*, 5 B. T. A. 158. But the earnings of a business in which a patent or an invention is used taken alone are not a criterion of the value of such patent or invention. The fact that the petitioner here had developed an invention which it had used in its business along with other patents in earning substantial profits over a period of years prior to March 1, 1913, certainly does not establish the fair market value of the application for a patent on the invention which was pending on that date. In the cases referred to by the petitioner and others, where we have used prior and subsequent earnings as the basis for determining the value of patents and patent applications at a given date, we have first ascertained that these earnings or a certain part of them were attributable to the particular patent or patent application under consideration and that all of the attending circumstances supported the value thus determined. We can not determine from the evidence here what part, if any, of the petitioner's earnings over the period 1909 to 1912 may be certainly attributed to the box-machine invention. During these years the petitioner used several other patented inventions each of which performed an important function in its manufacturing process. Assuming that the Commissioner has previously placed an aggregate value of $75,000 upon the other patents used, of which there is no direct evidence before us, still we can not say that such value is a proper basis to be used in allocating the petitioner's earnings to the several patents and inventions used. Moreover, the evidence fairly establishes that the petitioner had good will of a substantial value to which its earnings must in part have been attributable.

It has been shown that the box machine performed a necessary function in assembling the boxes and that it did the work more economically than it was done by hand before the machines were brought into use; that by use of the box machines the petitioner was enabled to increase its output of certain types of boxes and perhaps was able to secure and fill larger contracts for these boxes than it could have without the use of the box machines. We may conclude, therefore, that the box-machine invention was of some value to the petitioner in carrying on its business. We do not know, however, what this value was in terms of dollars or that it had any marketable value whatsoever. It is not shown that there was ever any demand for the invention by other manufacturers of paper boxes. It is not shown that the invention was in any way unique. The

evidence indicates that there were other machines available or capable of performing the same functions. We have no evidence showing the state of the art as it existed on the basic date. Certainly, a reasonably prudent investor would have inquired into these things before purchasing the patent application. Cf. *Cheatham Electric Switching Device Co.*, 1 B. T. A. 984.

Upon the evidence we are unable to determine what, if any, was the fair market value at March 1, 1913, of the patent application under consideration, or the cost of the patent when subsequently acquired. It is, therefore, not necessary to consider the question whether exhaustion of the patent for the years 1917 and 1918 should be computed upon the basis of the March 1, 1913, value of the patent application or the cost of the patent to the petitioner.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by TRUSSELL, LOVE, and LITTLETON.