HERSHEY MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28862, 32108.   Promulgated December 20, 1928.

*Geo. E. H. Goodner, Esq.*, for the petitioner.
*Harry LeRoy Jones, Esq.*, for the respondent.

OPINION.

SIEFKIN: The principal question herein presented for our consideration is the basis for computing the depreciation or exhaustion allowance on the Hershey patent for the years in question. The first step in the acquisition of this patent by petitioner consisted of an exchange of 4,000 shares of its common stock issued at the time of incorporation to the inventor, his brother and three associates, for their rights in an application for patent then pending. It is the value of the stock at the time exchanged that is the primary object of our search. *Kennedy Construction Co.*, 4 B. T. A. 276. We are concerned with the value, if any, of the patent application only as it may be reflected in, and constitute evidence of the value of the stock.

No stock was offered to others than those interested in the patent application or their close friends. Under such circumstances stock sales, though the evidence concerning them were more complete, would not, standing alone, be a dependable index to the value of the stock. The record consists principally of evidence pertaining to facts relating to the patent application and its value. We have repeatedly held that the value of corporate assets evidences the value of the stock. Respondent, however, earnestly urges that an application for a patent is not an assignable right which may be definitely valued and asks reconsideration of prior decisions by this Board holding the contrary. See *Individual Towel & Cabinet Service Co.*, 5 B. T. A. 158; *Commercial Truck Co. of America*, 5 B. T. A. 602; *Union Paper Co.*, 9 B. T. A. 1010; *Hartford-Fairmont Co.*, 12 B. T. A. 98; and *International Banding Machine Co.*, 12 B. T. A. 1062.

As this contention attacks the means principally relied upon by petitioner to show the value of the stock, it must be disposed of as a preliminary to any discussion of the value established by such evidence.

Respondent cites *Marsh v. Nichols, Shepard & Co.*, 128 U. S. 605, as authority for his proposition that there is no property right in a patent application. That case merely holds that there is no such right in a patent application as will ground a suit for infringement. While it is true the court in that case did say there was no property right until the patent issued, the import of such statement was limited

to the matter in question by the addition of the clause "that is, no such right as the inventor can enforce." Furthermore, that decision quotes with approval from *Gayler* v. *Wilder*, 10 Howard 476, at page 491, in which the court said:

The inventor of a new and useful improvement certainly has no exclusive right to it, until he obtains a patent. This right is created by the patent, and no suit can be maintained by the inventor against any one for using it before the patent is issued. But the discoverer of a new and useful improvement is vested by law with an inchoate right to its exclusive use, which he may perfect and make absolute by proceeding in the manner which the law requires. Fitzgerald possessed this inchoate right at the time of the assignment. The discovery had been made, and the specification prepared to obtain a patent. And it appears by the language of the assignment, that it was intended to operate upon the perfect legal title which Fitzgerald then had a lawful right to obtain, as well as upon the imperfect and inchoate interest which he actually possessed. The assignment requests that the patent may issue to the assignee. And there would seem to be no sound reason for defeating the intention of the parties by restraining the assignment to the latter interest, and compelling them to execute another transfer, unless the act of Congress makes it necessary. The court thinks it does not. The act of 1836 declares that every patent shall be assignable, in law, and that the assignment must be in writing, and recorded within the time specified. But the thing to be assigned is not the mere parchment on which the grant is written. It is the monopoly which the grant confers; the right of property which it creates. And when the party has acquired an inchoate right to it, and the power to make that right perfect and absolute at his pleasure, the assignment of his whole interest, whether executed before or after the patent issued, is equally within the provisions of the act of Congress.

Cf. *Keystone Type Foundry* v. *Fasteners Co.*, 263 Fed. 99, at page 100.

There is nothing in the *Marsh* case, *supra*, indicating any intention to overrule the principle established by the excerpt quoted. On the other hand the principles there enunciated have been followed in subsequent cases; see Montgomery, Income Tax Procedure, 1925. We must, therefore, reject the contention that there is no property right in a patent application. It is likewise apparent from the above quoted excerpt that such property right is assignable.

May such assignable property right be definitely valued? The case of *Durham* v. *Seymour*, 161 U. S. 235, is cited by respondent as authority for his negative assertion. In that case, which was an appeal from a decision of a lower court refusing a decree authorizing the Commissioner of Patents to issue a patent, the only question, so far as pertinent to this discussion, was whether the matter in dispute, i. e., whether or not a patent should issue, amounted to at least $5,000 so as to give the United States Supreme Court jurisdiction to consider the appeal under acts of Congress pertaining thereto. In

answering the question considered in the negative, the court said in part:

The matter in dispute was not money, and the only remaining inquiry is whether it was a right capable of being ascertained in money and appearing to be of the requisite pecuniary value?

The answer to this inquiry requires the application of the settled and necessary principle that the matter in dispute is, * * * "the subject of the litigation—the matter for which the suit is brought," and that matter here was the issue of a patent, that is, an application to the courts below to hold the alleged invention patentable and authorize a patent to be issued.

After referring to the decisions cited above to the effect that a patent application was an assignable property right, the court continues:

The right to apply for a patent was being availed of in this proceeding and the invention cannot be regarded for jurisdictional purposes as in itself property or a right of property having an actual value susceptible of estimation in money.

Whether the alleged invention were patentable or not was the question, and that question had no relation to its value in money. If the invention were not patentable. Durham had suffered no loss; if the invention were patentable, it was not material whether it had or had not a money value.

The bill, properly enough, does not allege that any sum of money was in dispute, although there are averments that the value of the invention is generally recognized, and that sundry persons are deriving large profits in making the device sought to be patented. Evidence of that kind, though not controlling, is sometimes introduced in suits on patents as indicative of invention in the production of new and beneficial results, but it is not relevant here, nor are the affidavits presented on the question of value if the patent were granted. The matter in dispute must have actual value, and that cannot be supplied by speculation on the possibility that, in a given case, an invention might be held patentable.

* * * * * * *

We are of opinion that the matter in dispute in this case was not capable of being valued in money, and that the appeal must be dismissed.

In our opinion, the language of the Supreme Court quoted above, when the question before the court is noted, does not go to the extent of holding that there is no property capable of valuation. No question of the value of the alleged right to obtain a patent had been raised in the courts below. Nor was any question of such value involved in the appeal. The sole reason for considering the point was to determine whether the record showed a minimum sum in controversy to give the court jurisdiction. The record did not only show no such amount but that the question presented had no relation to value. It was pointed out that a patent when issued may or may not have a value. That being true, the court could only speculate as to the value of alleged right. That the court refused to do. In other words the court saw no justification for assuming that the

patent application in question had a value. That is very different from saying that such value is not susceptible of proof as evidence of value of stock exchanged therefor. Considering the traditional policy of the Supreme Court of deciding only the issue before it, we do not consider the language authority for the respondent's broad assertion that an application for a patent can not be definitely valued.

Nor is the contention persuasive upon its merits. While such value may be difficult of proof, the same may be said of other intangible property values which the courts are constantly determining from evidence. In Robb's Patent Essentials, 1922, page 258, it is said:

While it is very common to-day for assignments of inventions to be made prior to issue of the patent therefor, strictly speaking, an invention is not an assignable monopoly until its ownership is fixed. The only method of establishing a *prima facie* ownership is by obtain'ng a patent.

Therefore, it is to be understood that the risk is upon the purchaser who buys an invention while it is resting under an applicat'on for patent. Proper investigations will enable the determination of the allowability of a patent, and the probable scope thereof, with a fair degree of safety. When such invest'gations are made there is a suitable basis for both inventor and purchaser to come to terms for the purpose of transfer of the monopoly.

Undoubtedly, petitioner purchased the application rights at its risk. But such risk is not peculiar to patent rights. Questionable titles and supposed causes of action are often the subject matter of valuation, purchase and sale. Doubts as to title or the extent of ultimate rights are matters to be considered in any attempt at appraising propery rights to which they pertain. They influence but do not preclude valuation. We must, accordingly, reject petitioner's preliminary contention that the patent application was not an assignable property right which could be definitely valued.

Respondent claims that the evidence of record is subject to the same infirmity as was found by the Board in *Commercial Truck Co.*, *supra*, in regard to which we stated:

The evidence submitted consisted of the testimony of engineers familiar with the petitioner's invention. Their opinions of value were upon the hypothesis that petitioner owned a patent on March 1, 1913, and were based upon the estimated royalties from the patented articles. This evidence is not sufficient to enable the Board to de ermine what value, *if any*, should be ascribed to the application for letters patent, which application was all that the petitioner owned on March 1, 1913. (Italics supplied.)

It is true, as respondent points out, that some of the questions framed by petitioner's counsel purport to refer to a patent rather than a patent application. But it is also apparent that the witnesses, including those who gave opinion testimony, were familiar with the

history of petitioner and knew that what petitioner received was a patent application. The two terms were used interchangeably throughout the record. If the confusion in' terminology led to confusion in thought, the respondent's point would be well taken. A careful search of the record, however, leaves no doubt in our mind that there was no such confusion as to the subject matter of testimony. It is clear that the evidence relates to that which petitioner actually received—a patent application.

None of the parties, including counsel for respondent, were misled. The record clearly distinguishes the case from such circumstances as are set forth in the excerpt quoted.

We come then to the question of determining the value of the stock issued for the patent application by reference to the value of the only corporate asset—the application. We are of the opinion that a substantial value in such asset has been proven. A substantial improvement over the prior art, and then existing prospects of a large market for the device at a good profit, are well established. The wide market has been substantiated by subsequent events, and the failure to realize the anticipated large profits may be due to many elements having no relation to the value of the patent application or the patent later issued. The evidence tending to show the claimed value of $250,000 is not inconsiderable. We have, however, discounted the claimed value to the $75,000 as found, in view of all the evidence.

Petitioner asserts that to this initial cost of the patent application there should be added the subsequent costs of experiment and development incurred to the date the patent was issued to determine the basis for depreciating such patent. Our belief is that before the expenditures can be either capitalized or charged as expense, their nature must be shown. If they can be compared to the cost of prosecuting the claim for a patent or cost incurred in defending title thereto once the patent issues, they can be said to relate directly to the patent property right. So far as appears here, however, the experimental cost subsequent to the acquisition of the application did not add to the capital value of the patent in question and should be excluded from its depreciation base.

This brings us to a consideration of the proper depreciation period over which the patent capital account may be exhausted. It is elementary that an asset which has no definite period of useful life is not the proper subject of exhaustion, as one of the essentials to measuring the deduction is unknown. The period covered by application pending is a variable factor. Furthermore, the date the patent issues marks the beginning of the asset in use in an enforce-

able right, as well as fixes its life. It follows that the inchoate right represented by a patent application matures into a depreciable asset beginning with the date the patent is issued and extending over the 17-year period covered thereby.

What has been said respecting experimental costs resolves the claim for a deduction for 1923 on account of such expenditures made in that year against the petitioner. It is claimed that such expenditures were development expenditures under the patent. We are without evidence from which the nature of the expenditures may be determined, and the denial of the deduction taken must be approved.

There remains the question whether costs of organization may be recovered by pro rata exhaustion deductions over the twenty-year period of corporate life. We have heretofore held that such cost can not be deducted as an expense item; *Logan-Gregg Hardware Co.*, 2 B. T. A. 647; *First National Bank of St. Louis*, 3 B. T. A. 807; *Emerson Electric Manufacturing Co.*, 3 B. T. A. 932; *American Colortype Co.*, 10 B. T. A. 1276. It represents the expenditure for a corporate asset used or useful in its business.

In *Corning Glass Works*, 9 B. T. A. 771, we held that the amount paid to financial agents for services in selling stock could neither be amortized over the maximum life of the stock and thus (based upon the remaining life of the corporation) taken as a deduction, nor be taken as a deduction in a later year when the stock was retired.

Reasoning from that case, we see similar reasons here for denying any pro rata deduction even though it be admitted that the organization costs are capital items. It is a matter of common knowledge that corporate charters for a definite period are often renewed or materially changed during that period or are permitted to lapse before the term expires. Further, although we have found that the cost of organizing the petitioner corporation was $1,271.71, we are unable to find from the evidence that such amount was paid by the petitioner. There is a possibility, at least, that such amount was paid by the promoters, before the corporation came into existence. We are unable to say that the revenue acts contemplate a deduction for exhaustion in such a case.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRAMMELL and PHILLIPS dissent on the last point.