KEYSTONE STEEL & WIRE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17496.   Promulgated May 22, 1929.

*Arnold R. Baar, Esq., Gilbert B. Geiger, C. P. A.,* and *George M. Morris, Esq.,* for the petitioner.

*P. M. Clark, Esq.,* and *C. C. Holmes, Esq.,* for the respondent.

OPINION.

SMITH: We have heretofore decided that a patent application is property and that a taxpayer under circumstances similar to those obtaining in the instant proceeding is entitled to a deduction on account of the exhaustion of a patent issued in a subsequent year based upon the March 1, 1913, value of the patent application prorated over the remaining life of the patent. *Individual Towel & Cabinet Service Co.*, 5 B. T. A. 158; *Hartford-Fairmont* Co., 12 B. T. A. 98; *Hershey Manufacturing Co.*, 14 B. T. A. 867.

The petitioner contends that the fair market value at March 1, 1913, of the application for patent on the Square Deal machine was at least $1,000,000. In support of that value it has adduced with other evidence the testimony of its president, the patent attorney who assisted in securing the patent, and of two individuals connected with other companies engaged in manufacturing woven wire fence. We think that the estimate of value placed on the patent application by these witnesses is far too high. It appears that their opinions were based largely on the assumption that the petitioner's savings in the amount of materials due to the use of the invention, estimated at between $50,000 and $85,000 annually, would extend over the entire life of the patent. In view of the facts shown we do not think that this is a proper basis for the determination of the fair market value of the patent application at March 1, 1913. The patent, or patent application, here did not cover the type of fence manufactured by the Square Deal machine or the method of making the knot, but merely the machine for making the fence. We do not find that the patent obtained was a basic or a generic one, or that it gave the petitioner any monopoly in the production of any type of wire fence. The evidence shows that the Anthony machine, patent on which was owned by the American Steel & Wire Co., produced a fence very similar to the Square Deal fence but that it operated at a slower rate of speed. Improvements in the Anthony machine rendering it equally as desirable as the Square Deal machine might have been made without infringement on the petitioner's patent.

We are of the opinion that the estimates of value made by witnesses for the petitioner were based largely upon hindsight rather than upon foresight; that it could not be foreseen at March 1, 1913, that the petitioner would enjoy over a period of years the advantage which it then enjoyed in the economic utilization of wire used in the manufacture of the fence. The patent was not infringed. There was never a demand, so far as the record shows, for a license of the patent and there was never any offer made to the petitioner for the purchase of it. The estimates of value were, we think, colored by the subsequent prosperity of the company. Cf. *The Conqueror*, 166 U. S. 110; *W. S. Bogle & Co.*, 5 B. T. A. 541; affd., 26 Fed. (2d) 771. Upon consideration of all of the evidence, we are of the opinion that the fair market value at March 1, 1913, of the application for patent on the Square Deal machine was not in excess of $200,000. A reasonable allowance for exhaustion of the patent for the taxable year ended June 30, 1923, is one-seventeenth of that amount.

The petitioner had a net loss for the fiscal year ended June 30, 1921, of $502,922.34, and net income for the fiscal year ended June

30, 1922, in the amount of $48,572.46, without any allowance for exhaustion of its patent on the Square Deal machine in either year. Section 204 (b) of the Revenue Act of 1921 provides as follows:

If for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year; and if such net loss is in excess of the net income for such succeeding taxable year, the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year; the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

We think that the petitioner is entitled to have its tax liability for the taxable year 1923 recomputed with due allowance for the depreciation of the patent in question in the years 1921 and 1922, to be reflected in the allowable net loss deduction, as well as in the year 1923, in accordance with the foregoing opinion.

*Judgment will be entered under Rule 50.*