## HERSHEY MFG. CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 214.

Circuit Court of Appeals, Tenth Circuit.

Sept. 4, 1930.

George E. H. Goodner, of Washington, D. C. (George L. Nye, of Denver, Colo., on the brief), for petitioner.

John McC. Hudson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch and M. K. Rothschild, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for respondent.

Before LEWIS, PHILLIPS, and Mc-DERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The petitioner appeals from a decision by the Board of Tax Appeals as to three items involved in its income tax returns for the years 1922 and 1923. The petitioner was organized in 1919 to acquire a patent application for an automobile lock and to manufacture and market the same. At the time of its organization, the application for patent had proceeded to the point where it was reasonably certain that its allowance would shortly be accomplished, as it was on May 30, 1922.

■ 1. The first and principal question involved is whether the board erred in fixing the cost of the patent for the purpose of depreciation or obsolescence, under section 234 (a)(7), Revenue Act 1921 (42 Stat. 227), and arts. 163, 164 and 167, Tr. Reg. 62, promulgated pursuant to that Act. The Board of Tax Appeals fixed the depreciable cost of the patent at $75,000. The petitioner contends that the cost of the patent was $250,-000. The capital of the corporation consisted of $400,000 par value of common stock, and $100,000 par value of preferred stock, all shares being of $50 par value. The corporation acquired the patent in exchange for $250,000 par value of common stock. Art. 167, Tr. Reg. 62 provides that where a patent is paid for in stock, its depreciable value shall be "the fair market value of the stock or securities at the time of the purchase." Upon the hearing before the board there was evidence of the incorporators that they investigated the probable market for the lock, costs of manufacture and sales, and determined therefrom that the patent was worth $250,000. There was also opinion evidence of qualified dealers in patents and patent rights to the same effect. But there was significant evidence to the contrary. The cost of the patent was $250,000 par value of common stock. That the incorporators themselves did not at the time consider the common stock as worth par is demonstrated by the fact that they gave from one to four shares of common stock as a bonus with each share of preferred stock sold at par. It is suggested that such sales, with the accompanying bonus, were largely confined to persons close to the incorporators; but stock, actually worth par, is not ordinarily given as a bonus even to such persons; certainly it should not be. The more rational conclusion is that the common stock was then worth much less than par, and the patent was cor-respondingly valued by the owners at much less than $250,000. Furthermore, the financial history of the corporation for the succeeding six years corroborates the then opinion of the corporate officers as to the value of the common stock. In this state of the record, we cannot say that the finding of the board was without substantial support in the testimony. The board's finding cannot therefore be disturbed. Prey Bros. Live Stock Comm. v. Commissioner (10 C. C. A.) 36 F. (2d) 326, and cases therein cited; Royal Pkg. Co. v. Lucas (9 C. C. A.) 38 F.(2d) 180; Powers Mfg. Co. v. Commissioner (8 C. C. A.) 34 F.(2d) 255.

■ 2. The second error assigned is the failure of the board to "hold that $4,666.77 expended by petitioner in experiments relating to the patent should be added to the depreciable base of the patent." The board found that such expenditures were made prior to the issuance of the patent. The board disallowed the claim because neither the nature of the expenditures, nor the value to the patent resulting from such expenditures, was shown; that in the absence of some showing that the expenditures "added to the capital value of the patent in question" the allowance was not justified. The record discloses a book entry of $4,666.77 charged to capital and a statement by the bookkeeper "that the total cost for development and experimental work up to that time [the date of the patent] was $4,666.77." The commissioner and the board were fully warranted in declining to find as a fact, from such evidence, that the value of the patent had increased in the exact amount of the experimental expenditures. Art. 168, Tr. Reg. 62, promulgated under the Revenue Act of 1921 (section 1303 [26 USCA § 1245]), authorized the taxpayer to capitalize expenses incurred in his business "for designs, drawings, patterns, models, or work of an experimental nature calculated to result in improvement of his facilities or his product," and to amortize such expenditures over their "estimated period of usefulness." The same regulation requires that the facts to support such a claim must be fully shown in the return or prior thereto to the satisfaction of the commissioner. The record in this case does not disclose the facts concerning these expenditures, nor that the work was calculated to result in the improvement of the facilities or the product, nor the period of usefulness of such expenditure. The petitioner has not, therefore, carried the burden of showing that it is entitled to the deduction claimed. Reinecke v. Spalding, 280 U. S.

300

227, 233, 50 S. Ct. 96, 74 L. Ed. ——; Botany Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379. Claim is made in the briefs for deduction from income for similar sums expended after the patent was issued; no such claim is assigned as error, and it is therefore not before us.

3. The board found that the cost of organizing the petitioner corporation was $1,271.71, and its charter was twenty years. The petitioner capitalized this expenditure, and claimed a deduction of one-twentieth of such sum each year,—thus amortizing the organization cost over the charter life. The commissioner disallowed the claim; the board sustained the commissioner primarily on the ground that corporate charters are often extended beyond the original grant, or lapse prior to its expiration.

 A corporation franchise is used in trade or business. Section 234(a)(7), Revenue Act 1921, authorizes a "reasonable allowance" for depreciation of property used in trade or business. Art. 163, Tr. Reg. 62, recognizes the propriety of depreciating intangible property such as "patents, copyrights, licenses, and franchises." It has been held by the Board of Tax Appeals that organization expenses cannot be deducted from income as a current expense. Appeal of Logan-Gregg Hardware Co., 2 B. T. A. 647; Appeal of First National Bank of St. Louis, 3 B. T. A. 807; Appeal of Emerson Electric Manufacturing Co., 3 B. T. A. 932; American Colortype Co. v. Commissioner of Internal Revenue, 10 B. T. A. 1276. To the same effect, see Simmons Co. v. Commissioner (1 C. C. A.) 33 F.(2d) 75; Corning Glass Works v. Lucas (App. D. C.) 37 F.(2d) 798. The petitioner correctly charged this expenditure to capital. Petitioner's charter was not of indefinite duration, and good accounting requires that such capital items be amortized. To amortize such items over the life of the charter appears to be reasonable. We conclude that the board should have permitted a reasonable allowance for such depreciation. The duty of ascertaining what is a reasonable allowance rests with the commissioner and the board; but the amount here involved is negligible, $63.58 a year; the briefs do not suggest that the amount claimed is unreasonable, if any allowance is to be made. Accordingly the order will be, that the decision of the board be modified, by deducting $63.58 from the net income of each of the two years in question; and as modified, the decision of the board is

Affirmed.