The John Douglas Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 38726. Promulgated August 25, 1931.

*J. Marvin Haynes, Esq., W. C. Magathan, Esq.,* and *S. Lester McCormick, Esq.,* for the petitioner.

*Eugene Harpole, Esq.,* and *E. M. Niess, Esq.,* for the respondent.

1310

**OPINION.**

VAN FOSSAN: The first question presented for our consideration in this case is whether or not applications for patents, maturing into patents, are subject to depreciation or exhaustion. The respondent's counsel had devoted himself almost exclusively to the theory that they are not, but we have frequently decided to the contrary. *Individual Towel & Cabinet Service Co.*, 5 B. T. A. 158; *Hartford-Fairmont Co.*, 12 B. T. A. 98; *Hershey Manufacturing Co.*, 14 B. T. A. 867; *Keystone Steel & Wire Co.*, 16 B. T. A. 617; *Empire Machine Co.*, 16 B. T. A. 1099. The petitioner is entitled to an allowance for exhaustion of its patent based on the March 1, 1913, value of the invention and the application for patent thereon and a seventeen-year life of such patent dated from June 8, 1915, its issuance date. *Stephens-Adamson Manufacturing Co.*, 16 B. T. A. 41.

Our next problem, therefore, is to determine the value of the petitioner's inventions and applications and patents therefor as of March 1, 1913. The petitioner introduced as its principal witness Daniel W. McNeil, a former machinist, who for many years had been engaged in various phases of the manufacturing plumbing business. He showed a thorough familiarity with the machine and hand processes of manufacturing vitreous china. His qualifications as an expert were not challenged. The value of his testimony was strengthened by cross-examination. He fixed the value of the inventions and of applications for patents thereon as of March 1, 1913, at from $1,750,000 to $2,000,000. He based his judgment on the savings in the cost of production due to the decreased amount of time, labor and floor space required and the use of cheaper materials, on the general demands of the industry at the time, on the unique character of the invention, on the peculiar need of the industry for machine production and on the amount of royalties obtainable through licensing the use of the invention. The petitioner also presented as a witness A. M. Maddock, vice president of the Standard Sanitary Manufacturing Company, which produces 27 per cent of the present output of the sanitary plumbing industry. Maddock is a man of large experience and training in manufacturing pottery ware. In 1913 he was general manager of Thomas Maddock & Sons Company, at that time the outstanding concern in the pottery industry. He testified that in about the year 1913 he had offered Douglas $1,000,000 for his entire rights to the invention and that the offer was only a " feeler " preparatory to further negotiations. Douglas was not interested in such a sale and Maddock then suggested the manufacture of vitreous china articles on a royalty basis. Douglas rejected that proposition also. Both McNeil and Maddock testified that a reasonable royalty for the use of the Douglas machine would have been between 50 cents and 75 cents per tank. It is uncontroverted that the production of tanks and other vitreous china articles can be accomplished much more economically and satisfactorily by machine manufacture than by the hand process. Hence, it is proper to assume that many other manufacturers in the industry would have been licensees of the Douglas patents had Douglas chosen to grant licenses for such use.

The respondent did not attempt to rebut the fair market valuation of the invention and patent applications established by the petitioner, nor did he discredit the testimony of the witness, McNeil. As we said in *Anita M. Baldwin*, 10 B. T. A. 1198:

   \* \* \* if the evidence adduced by one party in support of a proposed valuation is clear, convincing and uncontradicted and no reason for disbelieving or discounting such evidence is present, and if the adverse party neither weakens the testimony by cross-examination nor produces any evidence on his own behalf, the party producing the evidence should prevail.

The evidence in this case convinces us that the fair market value of the inventions and applications for patents therefor maturing into Patents Nos. 1142341 and 1142342 was $1,750,000 on March 1, 1913.

*Judgment will be entered under Rule 50.*