## SURETY FINANCE CO. OF TACOMA v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7221.

Circuit Court of Appeals, Ninth Circuit.

April 29, 1935.

'Raymond G. Wright, H. B. Jones, and Robert E. Bronson, all of Seattle, Wash., for petitioner.

Sewall Key and Norman D. Keller, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, Circuit Judge, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is an appeal from a decision of the Board of Tax Appeals upholding a determination of the Commissioner that deficiencies exist in petitioner's income tax returns for the years 1926 and 1927, in the amounts of $296.84 and $254.83, respectively. The Commissioner denied petitioner's right to amortize over its corporate existence the amount of $14,658.69, representing the cost of selling petitioner's capital stock, and the amount of $21,988.04, representing organization expenses and the cost of installing a business system. The deficiencies in question are the result of that determination. Petitioner claims the right to amortize the aforesaid expenses under section 234 (a) (7) of the Revenue Act of 1926, 44 Stat. 41, 42, 26 USCA § 986 (a) (7), which statute provides that in computing net income there shall be allowed as deductions "A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

The agreed facts are substantially as follows: Petitioner was incorporated under the laws of the state of Washington in 1923, with an authorized capital of $200,000, divided into 2,000 shares of the par value of $100 each, and a chartered existence of fifty years. The organization of petitioner was promoted by the agents and representatives of the Surety Finance Corporation, of California, hereinafter referred to as the California Company. The California Company had originated and developed a system for the organization and development of businesses intended and designed to operate primarily in the loaning of money to wage-earners and small borrowers upon personal indorsement, and had organized a large number of such institutions. It was the policy and practice of the California Company in the organization of such institutions to have the same incorporated by local individuals, upon certain agreements. The agreement in the case at bar recited that the California Company owned and controlled certain plans, forms, and other data especially adapted for such business, and proposed: (1) To give the petitioner the full and exclusive use for Pierce county, Wash., during petitioner's chartered existence, of all of the plans and other data under the California Company's control, necessary for the proper conduct of the business; (2) to furnish without cost to petitioner competent instructors to teach petitioner's employees the method of handling the loan business; (3) to furnish bimonthly audits without cost for the first six months, and thereafter, upon request, at cost; and also compare petitioner's monthly reports with reports of other companies under the California Company's supervision, for the purpose of pointing out errors or possible improvements in the operation of the system; (4) to secure a charter at no expense to petitioner; (5) to pay attorney's fees incurred in petitioner's organization, and also all necessary advertising expenses for the first six months, all expenses incident to the sale of petitioner's stock, and all expenses necessary for organizing and putting the business of petitioner in proper running order, except expense of supplies and tangible assets. In full remuneration for these services, petitioner was to constitute the California Company's president as petitioner's fiscal agent for the sale of its capital stock and to pay the California Company, through its president, 20 per cent. of the selling price of the stock. The foregoing proposal was duly accepted and carried out by the parties. In 1926, petitioner settled its liability to the California Company by paying said company the sum of $36,646.73.

From the agreed statement of facts it appears that: "Of such sum of $36,646.73, paid by the petitioner to cover the cost of its organization and sale of its capital stock, 40% thereof, or $14,658.69, fairly and reasonably represented the cost of selling petitioner's capital stock, and the balance, or 60%, amounting to $21,988.04, covered the other cost of organization referred to in said 'Exhibit B' (the foregoing organization proposal), including the profits accruing to the California Company upon such transaction."

There are two controlling assignments of error, namely, that the Board erred in not allowing a deduction "for the cost of selling petitioner's capital stock," and in not

allowing a deduction for "the cost of acquiring and installing the system of loaning."

In its brief on appeal from the Commissioner's determination, petitioner stated, as appears from the opinion of the Board, that "there is no logical basis for a distinction in the method of treatment between the cost or expense of sale of capital stock and the other expense of organization of the petitioner." Petitioner does not now contend that any basis exists for such a distinction. It is contended that the cost of obtaining petitioner's capital is represented by the two expenditures in question, and "good accounting requires that this cost be set up as an asset"; and it is argued that since this intangible asset will be exhausted and extinguished at the termination of petitioner's chartered existence, the value thereof should be amortized over the corporate life.

Petitioner's argument is based on a system of accounting, which it contends should be followed. Accounting methods, however, are not controlling in determining the extent to which a deduction is allowable. "The income tax laws do not profess to embody perfect economic theory." Weiss v. Wiener, 279 U. S. 333, 335, 49 S. Ct. 337, 73 L. Ed. 720. It is necessary to look to the statute. "A taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms." New Colonial Ice Co. v. Helvering, 292 U. S. 435, 440, 54 S. Ct. 788, 790, 78 L. Ed. 1348.

The two expenditures may not be considered as one, as petitioner does. It has been held that expenses incurred in the sale of a taxpayer's capital stock cannot be amortized [Barbour Coal Co. v. Commissioner (C. C. A.) 74 F.(2d) 163], but certain organization expenses may be amortized, under the statute [Hershey Mfg. Co. v. Commissioner (C. C. A.) 43 F.(2d) 298]. Accordingly, and since there are two assignments of error, the two expenditures will be treated separately, as follows: (1) Whether petitioner is entitled to amortize the expense of selling its capital stock; (2) whether it is entitled to amortize its organization expenses.

The Board held that the total expenditure was not deductible by way of amortization spread over the term of the corporate charter. Petitioner contends that in so holding the Board erred, and that under section 234 (a) (7), supra, it is entitled to amortize the expenditure, that is, deduct a proportion of it from gross income during each year of its corporate existence.

That a taxpayer is not entitled to amortize expenses incurred in selling its capital stock was decided by the Circuit Court of Appeals for the Tenth Circuit in a recent case, Barbour Coal Co. v. Commissioner of Internal Revenue, 74 F.(2d) 163, where the question for decision was stated by the court as follows: "Will a corporation created for a fixed term of years be allowed to amortize a commission by it paid to its representative for making sale of its preferred shares of its capital stock?" That is substantially the identical question presented in the case at bar. In the Barbour Coal Co. Case, the deduction was claimed under section 23 (k) of the Revenue Act of 1928, 45 Stat. 791, 799, 26 USCA § 2023 (k), which statute contains the identical language found in section 234 (a) (7) of the Act of 1926, supra, upon which petitioner relies. In disposing of the question the court said:

"The mere fact that an expenditure is made by a taxpayer does not necessarily entitle him to a deduction. Congress has power to grant, restrict, or deny deductions. So, the right to an asserted deduction must come within an applicable provision of the statute, else it does not exist. [Cases cited.] Reliance apparently is had upon section 23 (k) of the Revenue Act of 1928, 45 Stat. 791 (26 USCA § 2023 (k). It provides: 'A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence. * * *'

"However, the function and scope of this statute is to allow a deduction for the exhaustion of assets such as machinery, buildings, or other forms of personalty which depreciate through wear and tear. It has no application here because the expenditure in question was not to acquire property of that kind, but for capital in the form of cash for use in the business. It was not an exhaustible or depreciable asset. * * * It is equivalent for income tax purposes to the sale of stock at a discount. There can be no substantial difference between the two. The discount in the one instance represents the difference between the par value of the stock and the amount received for it; the commission represents that difference in the other. A capital expenditure cannot be charged income. Simmons Co. v. Commissioner of Internal Revenue, Lucas (C. C. A.) 33 F.(2d) 75, certiorari denied 280 U. S. 588, 50 S. Ct. 37, 74 L. Ed. 637; Corning

224

Glass Works v. Lucas, 59 App. D. C. 168, 37 F.(2d) 798, 68 A. L. R. 736, certiorari denied 281 U. S. 742, 50 S. Ct. 348, 74 L. Ed. 1155. * * *

"It is our opinion that the case falls within the doctrine declared in the case of Simmons Co. v. Commissioner of Internal Revenue, supra, and the case of Corning Glass Works v. Lucas, supra, and that the order of the Board of Tax Appeals should be affirmed."

We are in accord with the decision in the Barbour Coal Co. Case, and it is controlling here. The cost of selling petitioner's capital stock did not result in the acquisition of any property which could be subject to the depreciation allowance provided for by section 234 (a) (7) of the act. Accordingly, the Commissioner correctly determined that the expense of $14,658.69 incurred by petitioner in selling its capital stock was not deductible, or entitled to be amortized over petitioner's corporate life.

Before leaving this question, we will advert to the contention of petitioner that the case of Hershey Mfg. Co. v. Commissioner, 43 F.(2d) 298, 300, also by the same court, is directly in point. It appears from the opinion in that case, the court held that an expenditure incurred in organizing the taxpayer as a corporation was properly charged to capital and amortized over the corporate life as a depreciation allowed by section 234 (a) (7) of the Revenue Act of 1921, 42 Stat. 254, 255, saying: "Petitioner's charter was not of indefinite duration, and good accounting requires that such capital items be amortized." The taxpayer in the Barbour Coal Co. Case, supra, also relied on the decision in the Hershey Mfg. Co. Case, and in distinguishing the latter case the court in its opinion said: "Petitioner cites and stresses Hershey Mfg. Co. v. Commissioner of Internal Revenue, 43 F.(2d) 298, decided by this court. That case is clearly distinguishable from this one. It was held there that expenses of incorporation, such as attorneys' and charter fees, may be amortized over the definitely fixed period of the corporate existence because in such circumstances a corporate charter is property in the nature of an exhaustible asset, the value of which is exhausted ratably with passage of time. An expenditure for the acquisition of an exhaustible asset of that kind is vastly different from an expenditure to acquire capital consisting of cash for use in the conduct of the business."

So far as a deduction for expenses of selling petitioner's capital stock is concerned, the Hershey Mfg. Co. Case is also distinguishable from the case at bar, for the same reasons stated in the opinion in the Barbour Coal Co. Case, just quoted.

We turn now to the question whether petitioner is entitled to a deduction for expenses of organization, under section 234 (a) (7), supra. That question was not before the court in the Barbour Coal Co. Case, but it appears from the opinion therein that the Board of Tax Appeals had allowed the taxpayer a deduction for "expenses of incorporation." In the Hershey Mfg. Co. Case it was held that the taxpayer was entitled, as explained more fully later in the opinion in the Barbour Coal Co. Case, to a deduction for "expenses of incorporation, such as attorneys' and charter fees." Under that decision, it would seem that petitioner would be entitled to a deduction for expenses of incorporation, assuming that such expenses are included in the $21,988.04 charged to expense of organization. We need not decide the question because the expense of incorporating petitioner is not disclosed. In fact, there is no allocation or findings in the record to show just what expenses are included in the sum of $21,988.04, and, it cannot be determined, therefore, whether any of the expenses included therein should be amortized. It seems more likely, as respondent contends, that: "The greater portion, if not all of the amounts spent in installing a business system were in the nature of ordinary and necessary expenses and procured no property susceptible to the allowance." In any event, petitioner has failed to prove what, if any, deduction it is entitled to under the statute.