LAN JEN CHU AND GRACE Y. P. CHU, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4802–69.    Filed July 10, 1972.

*Paul J. Foley*, for the petitioners.
*William T. Hayes*, for the respondent.

600

**OPINION**

Raum, *Judge:* The issue for decision is whether the amounts received by Dr. Chu in 1962, 1963, 1964, and 1965, from the transfer of his 11/12 interest in the antenna patent application to Chu Associates, Inc., are taxable as ordinary income under section 1239, I.R.C.

1954,[1] or as long-term capital gain. Section 1239 provides in part as follows:

SEC. 1239. GAIN FROM SALE OF CERTAIN PROPERTY BETWEEN SPOUSES OR BETWEEN AN INDIVIDUAL AND A CONTROLLED CORPORATION.

(a) TREATMENT OF GAIN AS ORDINARY INCOME.—In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)—

(1) between a husband and wife; or

(2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren;

any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.

(b) SECTION APPLICABLE ONLY TO SALES OR EXCHANGES OF DEPRECIABLE PROPERTY.—This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167.

The Commissioner contends that Dr. Chu owned more than "80 percent in value" of the corporation's outstanding stock, and that the patent application was property of the nature contemplated by section 1239. Sec. 1239(a)(2) and (b), I.R.C. 1954. In support of their position that section 1239 does not apply to the transfer in question, the petitioners have presented several arguments in respect to paragraph (a)(2) of section 1239 as to the extent of Dr. Chu's ownership of stock in Chu Associates, Inc., and in respect of paragraph (b) as to the character of the patent application transferred.

Although we have substantial doubts on this record as to the soundness of petitioners' position under paragraph (a)(2) that Dr. Chu did not own "more than 80 percent in value" of the outstanding stock on December 18, 1959, the date of the assignment, we do agree with their contention that section 1239 is inapplicable because of the provisions of paragraph (b).

The caption of paragraph (b) calls attention to the fact that section 1239 is concerned only with sales or exchanges of "Depreciable Property," and the text explicitly indicates that the section is applicable only where the transferred property is "of a character which is subject

---

[1] No argument has been made by the Government that the amounts in issue constituted ordinary income solely on the basis that capital gain treatment is not permitted under sec. 1235, I.R.C. 1954, because of Dr. Chu's ownership of stock in excess of the limits set out in sec. 1235(d). Compare *Myron C. Poole*, 46 T.C. 392, 404–405, with Rev. Rul. 69–482, 1969–2 C.B. 164. Sec. 1235 deals with the transfer of "rights to a patent," and has been applied to the transfer of rights under a patent application as well. See *William W. Taylor*, 29 T.C.M. 1488, 1493. Cf. *Franklin S. Speicher*, 28 T.C. 938, 944–945. The Commissioner's argument herein that the amounts in issue received by Dr. Chu should be taxed as ordinary income is based entirely on the provisions of sec. 1239, I.R.C. 1954.

to the allowance for depreciation [in the hands of the transferee] provided in section 167." We hold that the patent application transferred by Dr. Chu does not come within those terms.

The starting point for the consideration of this issue is our decision in *Estate of William F. Stahl*, 52 T.C. 591, where the taxpayer had transferred eight patents and five patent applications to his controlled corporation. It was there held that the consideration received for the eight patents was taxable as ordinary income under section 1239. However, the Court ruled, relying upon *Hershey Manufacturing Co.*, 14 B.T.A. 867, affirmed 43 F. 2d 298 (C.A. 10), and *United States Mineral Products Co.*, 52 T.C. 177, that the five patent applications were not "depreciable property," nor were such applications property "of a character" that is subject to depreciation allowance. If we were to follow our prior opinion in *Stahl*, that would be the end of the matter, and petitioners would be entitled to prevail immediately upon the basis of that opinion. However, upon appeal to the Seventh Circuit, *Stahl* was affirmed in part and reversed in part in respect of the five patent applications, 442 F. 2d 324, and it becomes necessary to examine the present case in the light of the grounds relied upon by the Court of Appeals.

As to two of the patent applications involved in that case the taxpayer-assignor had received a formal "Notice of Allowance" from the Patent Office prior to the transfer, and as to a third application he had received notification from the Patent Office, also prior to the transfer, that two of the claims "appear[ed] allowable." The remaining two applications had been rejected. Although the Seventh Circuit affirmed this Court as to these latter two applications, the Court of Appeals reversed as to the first three. In its view (442 F. 2d at 328), the two applications as to which official notices of allowance had been received and the application as to which a notification that two of its claims "appear[ed] allowable" had been received prior to the transfer "were sufficiently matured applications as to require that they be treated as patents for purposes of section 1239."

Applying the criteria set forth by the Seventh Circuit in respect of the foregoing three applications, we cannot reach the same result here on the record before us. The application in issue embodied 18 claims. While it is true that the Patent Office repeatedly recognized the validity of claims 14–18, it had on as many as three separate occasions explicitly refused to "allow" or approve claims 1 through 13, which represented the heart of the claimed invention. We have set forth at some length in our findings the differences of views that were exchanged between Dr. Chu's representatives and the Patent Office. Although much of it is mystifying to us, it establishes to our satisfaction,

in the absence of clarifying expert testimony, that the application could hardly be characterized as "mature" so that it could be "treated as a patent for purposes of section 1239" within the meaning of the Seventh Circuit's opinion. Accordingly, whether we apply our own prior opinion in *Stahl* or whether we apply the criteria of the Seventh Circuit's opinion in that case, we come to the same conclusion on the record before us, namely, that the patent application which had been repeatedly rejected at the time of the transfer was not of a character subject to depreciation within section 1239.[2]

*Decision will be entered under Rule 50.*

---

[2] We note that as to one of the three applications in *Stahl*, reference is made to the fact that there had been official notification that two of the claims "appear[ed] allowable," and, of course in the present case, the Patent Office had originally approved claims 14–18 as well as certain of the other claims in later notifications. But in the instant case claims 1 through 13 were the "heart" of the patent, and until they had been declared "allowable," the application as a whole must in substance be regarded as having been rejected. On the other hand, we have no knowledge as to whether the two claims regarded as "allowable" in *Stahl* represented the essence of the invention, and in the absence of any further clarifying information, we may fairly assume that the Seventh Circuit regarded the basic claims in respect of that application to have been approved. In the instant case, it is clear that the application had not "matured" to the point that it could be regarded as the substantial equivalent of a patent within the analysis set forth by the Court of Appeals. We regard our disposition of this matter as wholly consistent with that analysis.