A. W. HENN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37102.   Promulgated October 3, 1930.

1134

David A. Gaskill, Esq., for the petitioner.
W. R. Lansford, Esq., for the respondent.

1142

OPINION.

STERNHAGEN: ■ In 1923 and 1924 petitioner sold in two respective parts his interest in a tract of land purchased sometime prior to 1919. In 1919 the tract had been leased by petitioner for five years with an option to the lessee to purchase during that period in whole or in part, and for the brokerage service petitioner paid $4,500. He now seeks to have this payment treated as part of the cost of the property to be used as the basis for determining the gain derived from its sale, and to support this theory argues that, although the transaction consummated by the broker was in form a lease the express terms of which were unambiguous, it was really regarded by petitioner as a sale because his counsel had been told by the lessee that a steel-manufacturing company was interested in the site and expected to buy it, and that the lessee's exercise of the option was reasonably certain, all of which in fact took place, the sales of 1923 and 1924 being those expected in 1919. The only evidence of these extraneous circumstances is the oral testimony of petitioner's attorney as to his understanding and belief derived from oral conversations. This does not serve to convert the contract from the lease, which it ostensibly is for all other purposes, into a conveyance, or to justify attributing the commission to the later sales instead of to the lease which alone was executed when the commission was paid. The commission may have been unusually high for the service of negotiating a five-year lease, but whether it be so or not, it was unconditional, and there is no evidence upon which it could be apportioned to both the lease and the prospective sale. In accordance with earlier decisions of the Board, the proper recognition of the outlay in 1919 was to spread it over the term of the lease and deduct it in the years during which the rental was derived. *Bonwit Teller Co.*, 17 B. T. A. 1019; *Julia Stow Lovejoy*, 18 B. T. A. 1179; *Central Bank Block Association*, 19 B. T. A. 1183. This requires an adjustment as to the unexhausted part of the commission in 1923 and 1924 when the land was sold, but this is a mathematical adjustment which can and should be made by the parties.

■ The second issue relates to both 1923 and 1924. Petitioner contends that the respondent erred in determining that he realized a profit of $62,791.21 in 1923 from the sale of his interest in the Hatch and Dagleisch leaseholds to the 1600 Prospect Co.; and that the respondent erred in failing to allow a loss of $65.43 for 1924 in connection with the same transaction. The cost of these leaseholds and the improvements thereon to the petitioner and Free are agreed by the parties to be $69,292 31. The respondent determined that the petitioner and Free transferred these leaseholds to the 1600

Prospect Co. for a consideration of $201,720.01, and that the profit to the joint interests from this transaction was $132,427.70, all of which was realized in 1923. He further determined that, of the total profit of $132,427.70, $6,845.28 was taxable to the petitioner alone, as interest, and that the remainder, $125,582.42, was taxable to the petitioner and Free in equal amounts. Accordingly, in computing petitioner's net income for 1923, the respondent included therein the sum of $62,791.21 as the petitioner's share of the profit derived from this transaction.

The respondent indicates in his brief that his determination as to the consideration involved in this transaction is based upon the entry in the journal, and properly posted in the ledger, of the 1600 Prospect Co., under date of March 1, 1923, by which the inventory account was charged with $201,720.01 and the accounts of the Prospect Avenue Account and the petitioner were credited with $160,-232.72 and $41,487.29, respectively. The journal entry is set out in full in the findings of fact. It will be noted that the explanation in the journal entry sets out the details of the credit of $41,487.29 to the petitioner's account, which includes two distinct items totaling $6,845.28, and it is this latter sum which the respondent deducted from the alleged profit of $132,427.70, to arrive at the profit realized by the petitioner and Free jointly.

The petitioner contends that the Hatch and Dagleisch leaseholds were transferred to the 1600 Prospect Co. for a consideration which was indefinite in amount. It is alleged that the real consideration in this transaction is set forth in the fifth paragraph of the agreement of July 18, 1923, under which the petitioner disposed of his stockholdings in the 1600 Prospect Co. and a claim of $42,441.41 against that company to the George W. Stone Co. The agreement, to which Free and the 1600 Prospect Co. were also parties, is set out in full in the findings of fact. Briefly summarized, it recites that the petitioner and Free, as lessees of the Hatch and Dagleisch leaseholds, have executed subleases to the 1600 Prospect Co.; that the petitioner and Free are the owners, in equal amounts, of all of the 100 shares authorized no-par value common stock of the 1600 Prospect Co.; that the 1600 Prospect Co. is indebted to the petitioner in the amount of $42,441.41, principal and interest to July 18, 1923; that the 1600 Prospect Co. is indebted to the petitioner and Free " in the amount of the proceeds of certain $200,000 face value of first mortgage leaseholds bonds * * * sold * * * to the Union Mortgage Company," less such an amount as is required to pay the latter's obligations and fixed charges, including rentals, taxes and interest; that the George W. Stone Co. desires to purchase the petitioner's 50 shares of common stock of the 1600 Prospect Co.; and then provides, that the George W. Stone Co. will assume the obliga-

tion of the 1600 Prospect Co. to the petitioner, in the amount of $42,441.41, payment to be made in four installments, the last of which is due 180 days from July 18, 1923; that the 1600 Prospect Co. agrees that its indebtedness of $42,441.41 to the petitioner shall be transferred to the George W. Stone Co.; and "that all carrying charges of the Third Party [1600 Prospect Co.] * * * to the extent that same are not met by the income * * * shall be defrayed from the proceeds of said $200,000 leasehold bonds sold to the Union Mortgage Company, and that the balance of the proceeds * * * shall be paid to First and Second Parties [the petitioner and Free], and that said sums, together with the sums heretofore paid * * * from the proceeds of said bond issue, shall be in full satisfaction and discharge of all claims of First and Second Parties against Third Party, other than the $42,441.41 assumed as aforesaid."

While under this agreement there was some possibility of liquidation of the 1600 Prospect Co.'s indebtedness to the Prospect Avenue Account at less than its face value, it can not be said to alter the terms of the transaction by which the petitioner and Free (the Prospect Avenue Account) transferred the Hatch and Dagleisch leaseholds to the 1600 Prospect Co. The terms of that transaction are indicated only by the journal entries of the 1600 Prospect Co. set forth in the findings. Under the quadrilateral agreement of July 18, 1923, Henn and Free, acting under the Prospect Avenue Account, might receive the entire amount credited to that account on the books of the 1600 Prospect Co. on account of the purchase price of the Hatch and Dagleisch leaseholds, or might receive less, depending entirely upon the net proceeds of the bond issue of the 1600 Prospect Co. which under the last paragraph of that agreement would ultimately be available for that purpose. From the entry on the books of the 1600 Prospect Co. of March 1, 1923, it appears that the Prospect Avenue Account and the petitioner were credited with $160,-232.72 and $41,487.29, respectively, a total of $201,720.01, on account of the purchase price of the Hatch and Dagleisch leaseholds, and we think from all the evidence that this must be taken to reflect the facts.

The statement of cash receipts and disbursements of the Prospect Avenue Account for 1923 and 1924, prepared from the books by a certified public accountant in 1927 when the books were available, and which is set out in the findings of fact, discloses that in those years there were received from the 1600 Prospect Co. $72,102.50 and $33,760, respectively. The statement also shows disbursements by the Prospect Avenue Account of $6,315.32 for 1923 and $7,060.07 for 1924, as advances to the 1600 Prospect Co. Consequently, the net receipts by the Prospect Avenue Account from the 1600 Prospect Co. amounted to $65,787.18 for 1923 and $26,699.93 for 1924; and

since there is no evidence of other transactions between the 1600 Prospect Co. and the Prospect Avenue Account, these net receipts should be applied entirely to the purchase price of the Hatch and Dagleisch leaseholds.

In addition to these receipts from the 1600 Prospect Co., the petitioner and Free were the direct beneficiaries of a certain payment made by the 1600 Prospect Co. The transcript of the account of the 1600 Prospect Co. on the books of the Union Mortgage Co. shows that the latter liquidated out of the proceeds of the 1600 Prospect Co.'s bond issue, in 1923, an obligation of the petitioner and Free of $41,600, secured by a mortgage against the Hatch and Dagleisch leaseholds. The obligation of $41,600 was assumed and paid by the 1600 Prospect Co. as a part of the consideration for the Hatch and Dagleisch leaseholds. This payment by the 1600 Prospect Co. was constructively received by the petitioner and Free in 1923, and the parties agree that it should be applied to the purchase price of the Hatch and Dagleisch leaseholds.

The evidence is that no promissory notes or other evidences of indebtedness were received from the 1600 Prospect Co. in connection with the transaction under consideration.

As previously pointed out, the acquisition by the 1600 Prospect Co. of the Hatch and Dagleisch leaseholds from the petitioner and Free was recorded on the books of the 1600 Prospect Co. at a purchase price of $201,720.01, of which $41,487.29 was credited to the petitioner's account. The journal entry which Free caused to be made on the books of the 1600 Prospect Co. indicates that the Prospect Avenue Account was indebted to the petitioner for advances made to pay the carrying charges on the Hatch and Dagleisch properties, in the principal sum of $34,642.01, and interest thereon of $6,845.28, and that this indebtedness was assumed by the 1600 Prospect Co. as a part of the consideration for the Hatch and Dagleisch leaseholds. Between March 1 and July 18, 1923, the petitioner's account was credited with additional interest of $954.12, bringing the credit balance in that account, on the latter date, to $42,441.41. It was this indebtedness of the 1600 Prospect Co. to the petitioner which was assumed by the George W. Stone Co. under the quadrilateral agreement of July 18, 1923. Under the terms of the agreement, this indebtedness was to be paid by the George W. Stone Co., as follows: $10,000 on execution of the agreement, $10,000 in 60 days, $10,000 in 120 days, and $12,441.41 in 180 days. There is no evidence as to when these installments were paid; but if they were paid when due, the first three installments, totaling $30,000, were paid in 1923, and the fourth installment of $12,441.41 was paid in 1924.

The assumption and payment by the George W. Stone Co. of the 1600 Prospect Co.'s indebtedness to the petitioner was the considera-

tion for the assignment of that indebtedness and the transfer of 50 shares of common stock of the 1600 Prospect Co. by the petitioner to the George W. Stone Co. Thus it appears that as the indebtedness was paid by the George W. Stone Co., there was a realization upon (1) the indebtedness of the 1600 Prospect Co. amounting to $42,441.41 ($41,487.29 assumed indebtedness of the Prospect Avenue Account and interest of $954.12), and (2) the selling price, if any, of the 50 shares of stock of the 1600 Prospect Co.; but there is no evidence as to what part of the consideration, if any, applied to the 50 shares of stock; and even if an apportionment were intended, the record furnishes no satisfactory basis therefor. Under these circumstances, we must follow the respondent in applying the entire consideration to the indebtedness of the 1600 Prospect Co. These payments of the George W. Stone Co. should be apportioned to principal anl interest as follows:

| | | Apportionment of payments | |
|---|---|---|---|
| | | Payments in 1923 | Payments in 1924 |
| Assumed indebtedness of Prospect Avenue Account: | | | |
| Advances | $34,642.01 | $24,486.95 | $10,155.07 |
| Interest | 6,845.28 | 4,838.63 | 2,006.65 |
| Interest due from 1600 Prospect Co | 954.12 | 674.42 | 279.69 |
| Total payments by George W. Stone Co | | 30,000.00 | 12,441.41 |

The total payments received by the petitioner, either constructively or actually, in 1923 and 1924 amounted to $83,693.59 and $25,791.38, respectively, made up as follows:

| | 1923 | 1924 |
|---|---|---|
| One-half of net receipts of Prospect Avenue Account from 1600 Prospect Co | $32,893.59 | $13,349.97 |
| One-half of indebtedness of the petitioner and Free assumed and paid by the 1600 Prospect Co. in 1923 | 20,800.00 | |
| Payments made to the petitioner by the George W. Stone Co | 30,000.00 | 12,441.41 |
| Total payments received | 83,693.59 | 25,791.38 |

The parties agree that the cost of the Hatch and Dagleisch leaseholds and the improvements thereon, to the petitioner and Free, was $69,292.32. The petitioner is entitled to compute his gain or loss from the sale of the Hatch and Dagleisch leaseholds upon the basis of one-half of this cost, or $34,646.16. It appears, however, that the petitioner was to recover out of the proceeds from the sale of the leaseholds to the 1600 Prospect Co. whatever was due him on account of the advances which he made to pay the carrying charges on the Hatch and Dagleisch properties incurred during the

period of his and Free's ownership. This is the inference to be drawn from the entry on the books of the 1600 Prospect Co. crediting his personal account with $41,487.29 of the purchase price of the leaseholds, and the debit entry of a corresponding amount against his personal account on the books of the Prospect Avenue Account, these entries indicating a transfer of the liability from the Prospect Avenue Account to the 1600 Prospect Co. Under the arrangements between them, the petitioner and Free were to share equally the gains and losses of their transactions. So, when Henn paid the carrying charges on the Hatch and Dagleisch properties, he, in effect, was paying his half share of such charges and was advancing the other half to Free. The petitioner's total payment of carrying charges amounted to $34,642.01, of which one-half, or $17,321.01, represented advances to Free; and therefore this amount of $17,321.01 is all the petitioner is entitled to recover.

From the foregoing it appears that the petitioner realized a profit from the sale of the Hatch and Dagleisch leaseholds in 1923 and 1924 in the respective amounts of $26,213.37 and $23,505.04, computed as follows:

|  | | 1923 | 1924 |
|---|---|---|---|
| Total payments from all sources | | $83, 693. 59 | $25, 791. 38 |
| Less: Payments for interest | $5, 513. 05 | | $2, 286. 34 |
| Payments for reimbursement of carrying charges | 17, 321. 01 | | |
| | | 22, 834. 06 | 2, 286. 34 |
| Balance representing payments on account of selling price of leaseholds | | 60, 859. 53 | 23, 505. 04 |
| Deduct: One-half cost of leaseholds | | 34, 646. 16 | |
| Profit on sale of leaseholds | | 26, 213. 37 | 23, 505. 04 |

The petitioner contends that receipt by the Prospect Avenue Account of $65,787.17 from the 1600 Prospect Co. in 1923 did not constitute receipt by him, and that he can not be charged with the receipt of any part of such funds except to the extent of his actual withdrawals, that is, $250 and one-half of whatever part of such funds was used to defray the expenses of properties owned by himself and Free jointly. Failing this, then the petitioner raises the alternative contention, in the brief, that he is entitled to a loss deduction on account of embezzlement by Free in an amount equal to Free's excess withdrawals.

The petitioner unequivocally testified that under the arrangements between them, Free was to conduct and manage all of the affairs of their joint interests; that Free had absolute control over all of the funds of the joint interests; and that the books and records were kept under Free's personal supervision. Counsel for petitioner made the statement, at page 32 of the record, that there were a number of written agreements between the petitioner and Free; but they were not placed in evidence and we have only the testimony of the peti-

tioner as to the nature of his relations with Free. From the evidence, we must, as a matter of law, regard Free as authorized to act for both, and we are of opinion that petitioner must be charged *pro tanto* with Free's receipts.

The petitioner testified that Free furnished him with annual statements purporting to show the receipts and expenditures of the Prospect Avenue Account; that he (the petitioner), at the time, believed such statements to be correct; that Free had no authority to draw on the funds of the Prospect Avenue Account for personal uses; that Free did not advise the petitioner that he was drawing on the funds of the Prospect Avenue Account for personal uses; and that he did not learn that Free was drawing on the funds of the Prospect Avenue Account for personal uses until after an examination of the accounts by a certified public accountant, in 1927. The inference which petitioner seeks to have drawn from this testimony is that the annual statements of receipts and expenditures of the Prospect Avenue Account which Free furnished to him were false, in that they failed to disclose that Free was drawing on the funds of the Prospect Avenue Account, for personal uses, amounts in excess of what he was actually entitled to. From an examination of the accounts in evidence, it appears that Free's withdrawals for·1923 and 1924 were $10,450.52 and $16,297.67, respectively, in excess of one-half of the cash receipts of the Prospect Avenue Account for those years. However, notwithstanding these apparently excess withdrawals by Free, his personal account on the books of the Prospect Avenue Account shows credit balances of $39,308.84 and $12,341.73 at the close of 1923 and 1924, respectively. In view of this we can not say that there was embezzlement by Free, a conclusion which we should be slow to reach after Free's death. The records which petitioner intimates were falsely kept by Free are the very records upon which he relies here.

Based upon the evidence and the admissions of counsel for the respondent at the hearing, there are findings of fact that the net incomes reported by the petitioner in his returns for 1923 and 1924 were computed upon the cash receipts and disbursements basis, and that the respondent's determination of deficiencies for those years is based upon net incomes computed upon the same basis. Under these findings, it is clear that the respondent erred in holding that the entire profit from the sale of the Hatch and Dagleisch leaseholds was realized in 1923, because a substantial part of the consideration involved in that transaction was not received until 1924. Since, however, respondent makes no claim for increase in deficiency for 1924, we do not add the payments received in that year to petitioner's 1924 income.

■ The third issue relates to 1924. Petitioner contends that the respondent erred in including in income an item of $10,000 treated

by the respondent as having been received by the petitioner from the H. & F. Realty Co. in that year. It appears from the journal entry of August 31, 1921, on the books of the H. & F. Realty Co., that the proceeds of the latter's bond issue to the Union Mortgage Co. were $20,000 in excess of the amount required for the construction of a building known as the Crawford Block; that Free and the petitioner agreed that this excess of funds should be "treated in the nature of anticipated profits on the Crawford Block and divided equally."; and that the entire sum of $20,000 was turned over to the Prospect Avenue Account "for use in carrying other properties held jointly" by the petitioner and Free. The accounts of the petitioner and Free, on the books of the H. & F. Realty Co., were each charged with the sum of $10,000. On December 31, 1924, another journal entry was made, unaccompanied by an explanation, crediting each of the accounts of the petitioner and Free with the sum of $10,000 and charging profit and loss with the sum of $20,000. This entry brought the petitioner's account into balance, thus in effect discharging him from the existing obligation in that amount.

In the deficiency notice the respondent added to net income for 1924, as returned by the petitioner, under the heading "Other income increased," the sum of $10,000, with the explanation, "This increase represents your share of the cash received from the proceeds of a bond issue." The respondent now contends that the payment of $20,000 by the H. & F. Realty Co. to the Prospect Avenue Account, as evidenced by the journal entry of August 31, 1921, was in the nature of a joint advance to the petitioner and Free; and that the closing of the petitioner's account by journal entry of December 31, 1924, was, in substance, a distribution of profits by the H. & F. Realty Co.

The two journal entries of August 31, 1921, and December 31, 1924, and the testimony of the petitioner, to the effect that he never received a penny from the H. & F. Realty Co. and did not know anything about the book entries, is all the evidence we have bearing upon this issue. Free, who kept the books, is dead. The two journal entries seem to support the respondent's position. The explanation in the journal entry of August 31, 1921, indicates that the disbursement to the Prospect Avenue Account was in the nature of an advance to be liquidated out of future earnings; and there is probably no other explanation for charging this disbursement to the accounts of the petitioner and Free and permitting such charges to remain on the books for a period of three years. If the disbursement was not an advance, it must have been a return of capital, since the company apparently had no accumulated profits out of which to make a distribution; but there is nothing in the journal entry to indicate an intent to reduce the capital of the company. The journal entry of December 31, 1924, by which the petitioner's and Free's accounts

were charged off against surplus, would indicate that there were sufficient accumulated earnings at that time to liquidate the advances.

As to the petitioner's testimony that he never received a penny from the H. & F. Realty Co., we construe that to mean that he never had physical possession of any part of the funds which that company turned over to the Prospect Avenue Account; but for reasons heretofore stated, we are of the opinion that receipt of such funds by Free for the Prospect Avenue Account constituted a constructive receipt by the petitioner. It is not enough to justify the exclusion of these items from his gross income derived in the course of complicated financial transactions such as are disclosed by the evidence, for petitioner to say merely that he did not receive the money in his actual possession.

■ The last contention to be considered is that the respondent erred in failing to tax the gains derived from certain transactions in 1923, as capital gains, under the provisions of section 206 of the Revenue Act of 1921; but the taxpayer elects to have his income from capital gains taxed under the provisions of section 206, only in case a saving results therefrom. The parties have stipulated five transactions entered into in 1923, involving the sale of capital assets. The respondent, in the brief, admits that the gains derived from these five transactions may be taxed under section 206, and in redetermining the deficiency that should be done.

*Judgment will be entered under Rule 50.*