SAMUEL E. DIESCHER AND MRS. SAMUEL E. DIESCHER (HUSBAND AND WIFE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AUGUST P. DIESCHER AND MRS. AUGUST P. DIESCHER (HUSBAND AND WIFE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 85715, 85716. Promulgated October 26, 1937.

*S. Leo Ruslander, Esq.*, and *R. J. Cleary, Esq.*, for the petitioners.
*John H. Pigg, Esq.*, for the respondent.

OPINION.

LEECH: The parties are in accord that the fair market value of the patents, patent applications, and inventions transferred by the partnership on September 28, 1932, to the Diescher Tube Mills, Inc., was $250,000 and that a consideration of that value was received upon the exchange, all of which constituted gain to the partnership. It is petitioners' contention that the only portion of this gain, recognized as taxable to them, was the $100,000 received in cash, by the partnership. Revenue Act of 1932, sec. 112 (c) (1).[1] They insist that the transaction between the partnership and the newly organized corporation falls within section 112 (b) (5) of the same act.[2]

---

[1] SEC. 112. RECOGNITION OF GAIN OR LOSS.

\* \* \* \* \* \* \*

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

(1) If an exchange would be within the provisions of subsection (b)(1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

[2] (b) EXCHANGES SOLELY IN KIND.—

\* \* \* \* \* \* \*

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

They argue that the transfer of property by the partnership to the corporation in exchange for stock and cash was a separate transaction to which only the partnership and the corporation were parties, and that immediately after the transfer the partnership was in control of the corporation through the ownership of all of its then issued capital stock, which consisted of the 2,500 shares to which the partnership was entitled. They contend that the purchase of 3,000 shares by the Babcock & Wilcox Tube Co. was an entirely separate and distinct transaction which occurred three days later and, that at the time the partnership acquired its stock the Babcock & Wilcox Tube Co. had no obligation of any kind to take stock in the newly organized corporation.

It is only necessary to say that the facts not only fail to support this contention, but, on the other hand, clearly show, in our opinion, that the purchase of 3,000 shares of stock in the new corporation by the Babcock & Wilcox Tube Co. was part of a single preconceived plan, adopted by the partnership, in which the first step was the transfer of the partnership assets in exchange for stock and cash in the new corporation. Under such conditions, the partnership could not be considered as in the control of the corporation since it acquired only 2,500 out of a total issue of 5,500 shares. *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77; *Helvering* v. *Security Savings & Commercial Bank*, 72 Fed. (2d) 874; *Bassick* v. *Commissioner*, 85 Fed. (2d) 8; *Hazeltine Corporation* v. *Commissioner*, 89 Fed. (2d) 513; *Edwin L. Dana*, 36 B. T. A. 231. The present record discloses that, on September 28, 1932, the date of the transfer by the partnership of the assets to the new corporation for stock and cash, the Babcock & Wilcox Tube Co. was definitely obligated, by its agreement, to subscribe for 3,000 shares of the capital stock to be issued by the new corporation. The only condition precedent was the acceptance by the National Tube Co. of a license agreement under the so-called option detailed in our findings of fact. This condition had then been met. On September 26, two days prior to the transfer of the assets by the partnership, the National Tube Co. had notified Babcock & Wilcox Tube Co. of its exercise of the option and that it was making payment of the balance of $180,000 due thereunder. This information had been transmitted by the latter company to the partnership with the definite commitment that it would take 3,000 shares of stock. The partnership had voluntarily authorized the payment of its share of the $180,000 to the Babcock & Wilcox Tube Co. so that company might have the necessary $180,000 in cash for its purchase of stock. The certificates covering the total issue of 5,500 shares of stock were issued on the same day, October 1, 1932.

It is thus clearly revealed that both of the acquisitions of stock were part of one planned transaction. Each constituted, merely, a step therein. The partnership was not in control of the corporation within the purview of section 112 (b) (5).

Alternatively, petitioners contend that, if the partnership can not be considered as being in control of the new corporation and its transfer of assets be deemed only an incident of a transaction in which the Babcock & Wilcox Tube Co. paid $180,000 in cash to the new corporation for stock, even then the transaction falls within section 112 (b) (5), for the reason that the partnership and Babcock & Wilcox Tube Co. must be viewed as having contributed, respectively, property and cash to the new corporation and immediately after the transfer were in control through ownership of all the corporate stock. Petitioners rely upon *Halliburton* v. *Commissioner*, 78 Fed. (2d) 265, and *Claude Neon Lights, Inc.*, 35 B. T. A. 424, in which it was held that money constitutes property within the meaning of the cited section. But, accepting the rule laid down in the two cited cases, the facts do not bring the exchange within section 112 (b) (5), *supra*, because of the limitation of its application to those cases, only, where "the amount of the *stock* and *securities* received by each is substantially in proportion to his interest in the property prior to the exchange." [Emphasis supplied.]

Petitioners properly admit that the gain realized by the petitioners in the exchange, to the extent of the cash payments—in this instance $100,000—is taxable in any event. Revenue Act of 1928, sec. 112 (c) (1). Thus, in determining whether the concededly realized gain to petitioners, reflected by the stock received in the exchange, is recognized and thus taxable under section 112 (b) (5), *supra*, these cash payments are ignored.

The subject of our only inquiry is the recognition of the gain admittedly realized in the receipt of stock by the partnership in the exchange. All such gain was recognized and taxed under all the Federal income taxing statutes preceding that of 1921. That continues to be the general rule. Revenue Act of 1932, sec. 112 (a). The Revenue Act of 1921, in section 202, counterparts of which appear in every revenue act since that of 1921, creates an exception to that general rule. This exception postpones the recognition and consequent immediate taxation of the realized gain contained in the stock received. However, such exceptions are construed strictly against the taxpayer and, the petitioners, to entitle themselves to the benefit of such exception, must clearly and unmistakably establish their right to its benefits. *Tucker* v. *Ferguson*, 22 Wall. 527; *Ryan* v. *Carter*, 93 U. S. 78; *Thomas E. Bashan Co.* v. *Lucas*, 21 Fed. (2d) 550; affd., 30 Fed. (2d) 97. Thus, the Revenue Act of 1932, controlling here, section 112 (b) (5), *supra*, as modified by section 112

(c) (1), *supra*, postpones the recognition of such gain for tax purposes, except in the amount of cash received, *when and only when*, "the stock and securities received" by the partnership and the Babcock & Wilcox Tube Co. were "substantially in proportion to * * * [their interests] in the property prior to the exchange."

That is to say, the provisions postponing the recognition of gain realized by the receipt of the stock by the partnership here, become effective *only* if section 112 (b) (5), *supra*, would apply, except for the receipt, by the partnership, of the $100,000, cash, in addition to the stock. But here, the record is emphatically clear that, in one inseparable transaction (Cf. *United Carbon Co.*, 32 B. T. A. 1000; reversed, 90 Fed. (2d) 43), the partnership exchanged "property" which constituted the entire ownership of certain patents and inventions admittedly worth $250,000, for 2,500 shares of stock in the Diescher Tube Mills, Inc., worth $150,000, plus $100,000, cash; while the Babcock & Wilcox Tube Co. exchanged "property" in the form of $180,000, cash (*Halliburton* v. *Commissioner*, *supra; Claude Neon Lights, Inc.*, *supra*), for the other 3,000 issued shares of stock in the Diescher Tube Mills, worth $180,000. Thus, under either the decision of the Board in *United Carbon Co.*, *supra*, or the opinion of the Circuit Court of Appeals for the Fourth Circuit, *supra*, reversing that decision of the Board, "the stock and securities received" by the partnership and the Babcock & Wilcox Tube Co. were not "substantially in proportion to [their interests] in the property prior to the exchange." Consequently, the present exchange fails in two respects to meet the conditions bringing it within the provisions of section 112 (b) (5), *supra*—in that, first, money was received in addition to stock, and, second, that the stock received by the Babcock & Wilcox Tube Co. and the partnership was not substantially in proportion to their prior interests in the property exchanged. It follows that the entire gain realized by the partnership in the exchange is recognized and taxable. Revenue Act of 1932, sec. 112 (a).

Having concluded that the transaction under which the partnership transferred property to the Diescher Tube Mills, Inc., was a taxable transaction and that the entire gain of $250,000 was subject to tax, it becomes necessary to determine what portion of the taxable profit, if any, resulted from the sale or exchange of property held by the taxpayer for more than two years, excepting that held primarily for sale in the course of the taxpayer's trade or business, and thus constituted capital gain. Revenue Act of 1932, sec. 101. In determining the deficiency, respondent allocated 20 percent of the total gain of $250,000, to the sale of capital assets. How this allocation was computed does not appear.

Coincident with the filing of his brief, the respondent moved for an increase in the deficiency, alleging that no part of the profit, in

question, is capital gain but, on the contrary, is all taxable as ordinary income. This contention of the respondent has no merit. He argues that the patents were held by the partnership primarily for sale in the course of its business. As to this, the record discloses nothing, in our opinion, indicating that the partnership has ever been in the business of buying and selling patents or in developing inventions for patent and sale. So far as we know, the patents involved here are the first which the partnership has ever sold, although it has been in business for many years. All of the other transactions having to do with the patents of the partnership have been connected with the licensing of their use. The basic patent involved in the exchange between the partnership and the newly organized corporation, and which represents the largest individual value among the patents and inventions exchanged, had been owned for many years by the partnership. During that time its use by other companies had been granted under license agreements. It is evident that the patents and inventions here in dispute did not constitute stock in trade, held for sale by the partnership in the course of its business.

Therefore, our inquiry is which, if any, of the patents and inventions exchanged constitute property held by the partnership for more than two years. There is no question about three of the patents, as set out in the findings of fact. As to certain others among the inventions, patents had not been applied for at the time of the transfer or had not been issued two years prior to that time. However, some of these inventions, we have found, were developed and perfected more than two years prior to their transfer to the Diescher Tube Mills, Inc., and these inventions had been embodied in a mill constructed and operated by the petitioners at the A. M. Byers Co. plant, in which their feasibility and value were demonstrated. They were thus reduced to practice more than two years prior to their exchange.

Under the common law, the property right of the inventor, to make, use and vend, was recognized. The patents issued under statute are merely the grant of the right to exclude others from that use for a period of 17 years. The inventor's property right in his invention does not come into being upon his obtaining of a patent but exists prior to that time upon his reduction of an original invention to actual practice. *Crown Die & Tool Co.* v. *Nye Tool & Machine Works*, 261 U. S. 24; *Six Wheel Corporation* v. *Sterling Motor Truck Co.*, 50 Fed. (2d) 568. As the court said in the last cited case:

From the foregoing, it will be seen that the irreducible quantum of the inventor's right in the res [the invention], even under the common law, is that of making, using and vending. The Federal Constitution and the statutes passed thereunder simply make that right exclusive. The statutes certainly do not curtail the natural right; they enlarge it.

We think, therefore, that petitioners had a property right in each of the inventions which they had reduced to practice. These rights represented something of exchangeable value which the partnership possessed since it was able to exchange them for a valuable consideration. See *Gayler* v. *Wilder*, 10 Howard, 477; *Individual Drinking Cup Co.* v. *Osmun-Cook Co.*, 220 Fed. 335; *Hershey Manufacturing Co.*, 14 B. T. A. 867; affd., 43 Fed. (2d) 298; *George Washington, Sr.*, 36 B. T. A. 74. That answers the only question presented here. So, we conclude that these particular patents and inventions perfected and demonstrated more than two years prior to September 28, 1932, constituted property owned by the partnership for more than two years.

The only remaining question with respect to this exchange is what part of the total gain of $250,000 represents the consideration applicable to these several patents and inventions. This we have found in our findings of fact. It is urged by the respondent that there is no basis in the record for determining a value for any one of the patents or inventions. This position falls because it is admitted that, collectively, these assets represent a total value of $250,000 so that it is necessary, only, to determine the relative value of the individual patents and inventions to arrive at the value of each. Samuel E. Diescher is an eminent engineer, familiar in detail with the patents and inventions and their comparative importance. He testified to this relative value. His testimony is, we think, competent and it stands uncontradicted.

The only remaining issue is whether the partnership realized income for the year 1932, represented by its share, amounting to $50,000, of the payment of $180,000 made by the National Tube Co. on September 28, 1932. This payment was actually received then by the Babcock & Wilcox Tube Co. and $50,000, the share due the partnership, was paid over to the partnership during the year 1933. Since the partnership was on a cash basis, the petitioners contend that this payment was income to it, in the latter year.

This $50,000 was a portion of the total consideration paid by the National Tube Co. for its license to use the Diescher patents. The total consideration was $200,000, of which $150,000 constituted the consideration which the Babcock & Wilcox Tube Co. received for negotiating the sale of the license. The evidence convinces us that the Babcock & Wilcox Tube Co. was the agent of the partnership in negotiating the sale of this license. The $50,000, due the partnership in the transaction, in fact, was the net consideration received by it for a license to use its patents. That fact is not changed by the agreement with the Babcock & Wilcox Tube Co. that this sum be designated a commission due the partnership for assisting its agent

in negotiating a sale of its property. It would seem ridiculous to conclude that the total consideration paid by a purchaser of property consisted of two commissions for negotiating the sale and that nothing was received for the property.

This sum of $50,000 was due the partnership and it lay within its power to receive the payment in the year 1932. It was not then physically in possession of the amount paid, only because it voluntarily directed the National Tube Co. to pay the total consideration to its agent, Babcock & Wilcox Tube Co. The latter company received the payment in 1932, as agent for the partnership, and for its account. The partnership voluntarily authorized this payment to its agent for the purpose of securing to the latter sufficient funds to pay for the 3,000 shares of stock of the newly organized corporation, for which this agent had individually subscribed. We therefore find that the partnership constructively received this payment of $50,000, in 1932, loaned it then to the Babcock & Wilcox Tube Co. for the temporary use of that company, and received repayment of that loan in the following year. *Maryland Casualty Co. v. United States*, 52 Ct. Cls. 201; modified on another point, 251 U. S. 342; *F. H. Wilson*, 12 B. T. A. 403; *Estate of C. W. Crews*, 8 B. T. A. 301; *A. W. Henn*, 20 B. T. A. 1133; *Louis Reizenstein, Trustee*, 9 B. T. A. 1184; *L. & M. Holding Co.*, 3 B. T. A. 601; *Julia A. Strauss*, 2 B. T. A. 598; *Frank E. Best*, 26 B. T. A. 1070; 21 B. T. A. 1264.

The deficiencies in each of these two proceedings have been determined against husband and wife. The reason for this procedure, apparently, is that a joint return was filed in each instance. The deficiency in each proceeding arises upon the receipt of income by a partnership wholly owned by the two petitioners, Samuel E. Diescher and August P. Diescher. No income of the respective wives of these petitioners is involved. Accordingly, as to them no deficiencies exist. With respect to the petitioners Samuel E. Diescher and August P. Diescher

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

ARUNDELL, dissenting: On the first issue it is my opinion that the exchange of property for cash and stock of the new corporation comes within subsections (b) (5) and (c) (1) of section 112 of the Revenue Act of 1932 and that the recognizable gain to the partnership should be limited to the cash received by it. The transaction, in brief, was this: The partnership transferred property worth $250,000 to the new corporation for stock worth $150,000 and $100,000 cash; the other stockholder paid in cash to the new corporation in

the amount of $180,000 and got stock in the same amount. These two transferors, one transferring property consisting of patents, patent applications, and inventions, and the other transferring property in the form of cash (*Halliburton* v. *Commissioner*, 78 Fed. (2d) 265) were in control of the new corporation immediately thereafter. So far they are within the first clause of section 112 (b) (5). But, says the majority opinion, they are excluded from that section by reason of the last clause requiring that the stock and securities received by each transferor be substantially in proportion to his interest in the property prior to the exchange. It is said that this requirement is not met for this reason: The partnership transferor took out of the new corporation stock worth less than the assets it put in by $100,000, whereas the other transferor took out stock equal in value to the property (cash) that it put in. Wherefore, it is said, the required before-and-after equal proportions are destroyed. This view, it seems to me, disregards subsection (c) (1) which I think was designed to meet the very situation presented here. It is not at all uncommon in the creation of corporations and in corporate adjustments that some of the parties to the transaction receive cash in addition to stock and securities, and subsections (b) (5) and (c) (1) together provide for this and include such situations in the nonrecognition provisions after taking due account of the cash or "other property" received by recognizing gain on them. It is after the cash or other property is subjected to recognition that the determination is to be made as to whether the before-and-after proportions are maintained. That is, the cash or other property must be considered as being paid for an equivalent portion of the property transferred, and then the remainder of the property transferred is taken as the basis for measuring the proportions of the transferors before and after the exchange. To hold otherwise would be to say that the cash or other property was a gift, which of course is not the fact, and if it were it would not be recognized as a gain. So, in the present case the $100,000 cash should be set off against an equivalent amount of the property transferred by the partnership— and this the partnership admits comes within the recognition provisions. The $100,000 worth of property so set off against the cash should not again be used for measuring the proportions under subsection (b) (5). That property, like the cash, should be excluded from further consideration; to borrow the words of the majority opinion, the "cash payments are ignored." Excluding $100,000 worth of property transferred, the partnership transferred the remainder of the property of a value of $150,000 for $150,000 worth of stock and the other transferor transferred property (cash) of the value of $180,000 for $180,000 worth of stock. Thus each of the

two transferors received stock exactly in proportion to the property transferred. This view carries out the intent of the two subsections when read together, as they must be because of the reference in (c) (1) to (b) (5).

I think the view here expressed is entirely consistent with the holding of the Circuit Court of Appeals for the Fourth Circuit in *United Carbon Co.* v. *Commissioner,* 90 Fed. (2d) 43.

BLACK agrees with this dissent.